1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLUK KHAN MAYWEATHERS,<br><br>                                    Plaintiff,<br><br>              v.<br><br>R. Q. HICKMAN, et al.,<br><br>                                    Defendants. | Civil No.      05-CV-713 WQH (CAB)<br><br>**REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT [Doc. # 57]** |

## I.  INTRODUCTION

This case is brought by Plaintiff Karluk Khan Mayweathers ("Plaintiff" or "Mayweathers"), a state prisoner proceeding *pro se*, under 42 U.S.C. § 1983.  Defendants move to dismiss Plaintiff's Third Amended Complaint ("TAC").  Plaintiff opposes Defendants' motion.  For the reasons that follow, the undersigned Magistrate Judge recommends that the motion be **GRANTED** in part and **DENIED** in part.

## II.  FACTS

The TAC alleges the following.  Plaintiff was at different times incarcerated at Calipatria, Solano and Tehachapi State Prisons.  Plaintiff lists a number of dates on which Defendants violated his civil rights: February 18, 2005; January 1, 2001; November 23, 1990; and November 3, 1986.  (TAC, p. 1). A specific description of the offensive act is provided only for the February 18, 2005 claim.

On February 18, 2005, Plaintiff was incarcerated at the Calipatria State Prison ("Calipatria"). Plaintiff was apparently celled with a cellmate of the same race.  Plaintiff asked to be randomly celled

1  with a cellmate of another race.  (TAC, p. 3).  Defendants R. Bennett, Hunt, and Trujillo, acting under

2  the supervision of Defendants Ryan and Ochoa, refused Plaintiff's request.  *Id.*  Plaintiff was then placed

3  in administrative segregation for a week.  *Id.*  While in administrative segregation, Plaintiff was denied

4  his religious diet trays required by his orthodox Muslim faith.  *Id.*[1]

5       Plaintiff's TAC alleges violations of his equal protection rights and the Religious Land Use and

6  Institutionalized Persons Act of 2000.[2]

7                                    **III.  LEGAL STANDARD**

8       "A Rule 12(b)(6) dismissal motion 'can be granted only if it appears beyond doubt that the

9  plaintiff can prove no set of facts in support of his or her claim.'"  *Holley v. Crank*, 400 F.3d 667, 674

10  (9th Cir. 2005) (internal citation omitted).  "All allegations of material fact are taken as true and

11  construed in the light most favorable to the nonmoving party."  *Tanner v. Heise*, 879 F.2d 572, 576 (9th

12  Cir. 1989).

13       Civil rights complaints are construed liberally.  *See Holley*, 400 F.3d at 674.  Moreover, courts

14  "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the

15  pleadings liberally and to afford the petitioner the benefit of any doubt."  *Bretz v. Kelman,* 773 F.2d

16  1026, 1027 (9th Cir. 1985) (*en banc*) (internal citation omitted).

17       "However, a liberal interpretation of a civil rights complaint may not supply essential elements of

18  the claim that were not initially pled.  Vague and conclusory allegations of official participation in civil

19  rights violations are not sufficient to withstand a motion to dismiss."  *Ivey v. Board of Regents of*

20  *University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (internal citation omitted).

21                                    **IV.  DISCUSSION**

22       **A.     Plaintiff's 1986, 1999, and 2001 Claims are Barred as Untimely**

23       Plaintiff's 1986, 1990, and 2001 claims fail as barred by the statute of limitations.  Section 1983

24  does not contain a statue of limitations.  Section § 1983 claims are characterized as tort actions for the

---

25       [1]Plaintiff's opposition also asserts that while in administrative segregation, he was denied pen
26  and paper and was prevented from using the law library.  The TAC does not contain these allegations,
    and they will not be considered.

27       [2]In addition, the TAC briefly refers to a "violation of APA" without providing any details or even
28  the full name of the law violated.  (TAC, p. 3).  In the event "APA" stands for the Administrative
    Procedure Act, the TAC does not even attempt to state a claim under the Act.

recovery of damages for personal injuries. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Therefore "a State's personal injury statute of limitations should be applied to all § 1983 claims." *Owens v. Okure*, 488 U.S. 235, 240-41 (1989) (citation omitted). As of January 1, 2003, the California statute of limitations period for personal injuries is two years. Cal. C.C.P. § 335.1; *Andonagui v. May Dept. Stores Co.*, 128 Cal.App.4th 435, 440 (Cal.App. 2 Dist. 2005). Prior to that, the statutory period was one year. Cal. C.C.P. § 340.

"Federal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 action. Specifically, in [§ 1983 actions], the claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994) (citations omitted). Therefore Plaintiff's cause of action accrued at the time of the events, in 1986, 1990 and 2001, and the statutory period was to run out in 1987, 1991 and 2002, respectively.

Plaintiff does not benefit from tolling. When not inconsistent with federal law, courts apply the law of the forum state regarding tolling. *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (citation omitted). Under California law, the tolling period is two years maximum:

> If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. C. C. P. § 352.1(a). Therefore Plaintiff's claims were tolled until 1988, 1992 and 2003, respectively. The present action was filed in 2005, past the expiration of the tolling period.

Finally, contrary to Plaintiffs' argument, the limitations period is not extended by the alleged consequences of the violations. Plaintiff argues that although the underlying events happened years ago, they have resulted in disciplinary reports which "to this day are being cited and used adversely" at his Parole Board hearings. (Pl.'s Opp. to Defs.' Mot. to Dismiss, p. 7).

Plaintiff seems to rely on the collateral consequences doctrine. Under the doctrine, a habeas corpus petition does not automatically become moot upon petitioner's release from custody if collateral consequences of the underlying conviction still exist. *See White v. White*, 925 F.2d 287 (9th Cir. 1991). The Supreme Court, however, has held that the presumption of collateral consequences does not apply to

05-CV-713 WQH (CAB)

the revocation of parole. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Further, "the presumption of collateral consequences does not apply to prison disciplinary proceedings." *Wilson v. Terhune*, 319 F.3d 477, 480 (9th Cir. 2003).

> The Supreme Court has distinguished between "substantial civil penalties" that result from a criminal conviction, such as the inability to engage in certain businesses, to serve as an official of a labor union, to vote in state elections, and to serve as a juror, and "non-statutory consequences" that "result from a finding that an individual has violated parole," such as the effect on employment prospects or the sentence imposed in future criminal proceedings.  The latter consequences are "discretionary decisions" that "are not governed by the mere presence or absence of a recorded violation," but "are more directly influenced by[ ] the underlying conduct that formed the basis for the parole violation." ... Because the decision whether to grant parole is left to "the judgment of the" Board of Prison Terms, Cal.Code Regs. tit. 15, § 2402, the likelihood of delayed or denied parole is a type of nonstatutory consequence dependent on discretionary decisions that is insufficient to apply the presumption of collateral consequences.

*Id.* (citations omitted).

Therefore the alleged use of disciplinary reports does not remove the timeliness bar for Plaintiff's 1986, 1990 and 2001 claims.  Because the untimeliness cannot be cured by an amendment, these claims should be dismissed with prejudice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**B.    Defendant California Department of Corrections Is Immune**

Defendant California Department of Corrections ("the CDC") should be dismissed as immune from suit.  The Eleventh Amendment precludes suits "in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440 (2004).  Agencies of the state are also immune from private damage actions or suits for injunctive relief brought in federal court. *Dittman v. California,* 191 F.3d 1020, 1025 (9th Cir. 1999) (internal quotation marks omitted).  As a state agency, the CDC is immune from suit.  Because claims against the CDC are legally insufficient and cannot be saved by an amendment, they should be dismissed with prejudice. *See Lee,* 250 F.3d at 688.[3]

**C.    Lack of Personal Involvement by Defendants Hickman, Woodford, and Giurbino**

Defendants Hickman, Woodford and Giurbino should be dismissed because there are no

---

[3]Defendants also note, as part of their argument for dismissing the CDC based on Eleventh Amendment protection, that state officials are not immune from suit for injunctive relief in their individual capacities.  No reference to specific state official Defendants is made.  Because the CDC is an entity and cannot be sued in its individual capacity, it is immune from all claims, including those for damages and injunctive relief.  Therefore all claims against the CDC should be dismissed.

05-CV-713 WQH (CAB)

1   allegations of their personal participation in the violation.  "[A] plaintiff in a section 1983 action must

2   show: (1) that the conduct complained of was committed by a person acting under the color of state law;

3   and (2) that the conduct deprived the claimant of a right secured by the Constitution or federal law."

4   *Hammer v. Gross*, 884 F.2d 1200, 1203 (9th Cir. 1989).  Hickman is the former, and Woodford is the

5   current Director of the CDC.  Giurbino is the former Warden of Centinela.  There are no allegations that

6   these Defendants personally committed any violations of Plaintiff's civil rights.

7         A supervisor is liable for constitutional violations of his subordinates if the supervisor

8   "participated in or directed the violations," "knew of the violations and failed to act to prevent them," or

9   "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is

10   'the moving force of the constitutional violation.'"  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

11   1989); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  The inquiry into causation must be

12   individualized and focused on the duties and responsibilities of each individual defendant whose acts or

13   omissions are alleged to have caused a constitutional deprivation.  *Leer v. Murphy*, 844 F.2d 628, 633

14   (9th Cir. 1988) (internal citation omitted).

15         Plaintiff's allegations against Hickman are very general and based solely on Hickman's status "as

16   a high-level supervisory official."  (TAC, p. 2).  As mentioned above, "[v]ague and conclusory

17   allegations of official participation in civil rights violations are not sufficient to withstand a motion to

18   dismiss."  *Ivey*, 673 F.2d at 268.  The TAC contains no allegations against Wood or Giurbino

19   specifically.  Plaintiff's opposition only notes that the prison policies are a "reflection of the officers in

20   charge."  (Pl.'s Opp. to Defs.' Mot. to Dismiss, p. 25).  Because Plaintiff does not plead facts indicating

21   that these three Defendants directed the violations, were aware of the violations and failed to prevent

22   them, or instituted a policy promoting the violations, claims against them should be dismissed.

23         Further, the undersigned recommends that the claims be dismissed with prejudice.  Dismissal

24   with prejudice is appropriate where a plaintiff repeatedly fails to cure pleading deficiencies.  *See*

25   *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  This is Plaintiff's Third Amended Complaint.

26   Previous Court Orders informed Plaintiff that *respondeat superior* liability does not exist in § 1983

27   actions.  (*See, e.g.,* Order Dismissing First Amended Complaint, doc. # 19, p. 13; Order Dismissing

28   Second Amended Complaint, doc. # 36, p. 15).  Although the previous pleadings named other

05-CV-713 WQH (CAB)

1    supervisory defendants, the legal deficiency is the same, and dismissal with prejudice is appropriate.

2    **D.    Equal Protection Claim Is Properly Alleged**

3    Plaintiff properly alleged an equal protection claim based on the February 18, 2005 incident.[4]

4    "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any

5    person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all

6    persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473

7    U.S. 432, 439 (1985) (citation omitted).  "To state a claim under 42 U.S.C. § 1983 for a violation of the

8    Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted

9    with an intent or purpose to discriminate against the plaintiff based upon membership in a protected

10   class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied,* 525 U.S. 1154 (1999).

11   Where defendants consider race as a factor in assigning cellmates, the policy is suspect on its face and

12   the plaintiff need not prove discriminatory intent or impact.  *See Walker v. Gomez,* 370 F.3d 969, 973-74

13   (9th Cir. 2004).

14   Plaintiff alleges that on February 18, 2005, Defendants R. Bennett, Hunt, and Trujillo, acting

15   under the supervision of Defendants Ryan and Ochoa, based on Plaintiff's race denied his request to be

16   either randomly celled with another inmate or be assigned a cellmate of a different race.  (TAC, p. 3).

17   Plaintiff also alleged that the prison has a policy of racial segregation of inmates, apparently for interests

18   related to security.  *Id.*

19   Plaintiff's allegations are sufficient.  Federal Rules of Civil Procedure only require "a short and

20   plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Such

21   a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds

22   upon which it rests."  *Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506, 512 (2002).  A court may dismiss a

23   complaint only if it is clear that no relief could be granted under any set of facts that could be proved

24   consistent with the allegations.  *See id.* at 514.  "The issue is not whether a plaintiff will ultimately

25

26   [4]Plaintiff's SAC also states, "[Defendants] violated Plaintiff's free exercise right to either be
     randomly celled with another prison[er] without any race-based animus or to be celled with someone
27   from another race."  (SAC, p. 3).  Although Plaintiff uses the phrase "free exercise" which is typically
     applied in the context related to religious beliefs, this phrase appears to be the wrong choice of legal
28   terms for his equal protection claim.  In the event Plaintiff was in fact referring to an equal protection
     claim based on religious discrimination, his allegations are too vague to state a claim.

05-CV-713 WQH (CAB)

1    prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear

2    on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Jackson*

3    *v. Carey,* 353 F.3d 750, 755 (9th Cir. 2003) (citation omitted).

4         Further, civil rights complaints are construed liberally.  *See Holley*, 400 F.3d at 674.  Moreover,

5    courts "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the

6    pleadings liberally and to afford the petitioner the benefit of any doubt."  *Bretz v. Kelman,* 773 F.2d

7    1026, 1027 (9th Cir. 1985) (*en banc*) (internal citation omitted).

8         Therefore although Defendants argue that Plaintiff failed to state a claim because he did not

9    specify what each Defendant did or demonstrate discriminatory intent, Plaintiff satisfied the pleading

10   requirements.  Mayweathers provided Defendants' names and described the essence of the alleged

11   wrongdoing.  He is not required to plead with more specificity.

12   **E.    Qualified Immunity**

13        Defendants, however, are entitled to qualified immunity on Plaintiff's equal protection claim.[5]

14   The defense of qualified immunity shields a § 1983 defendant from trial when the defendant

15   "'reasonably misapprehends the law governing the circumstances she confronted,' even if the

16   [defendant's] conduct was constitutionally deficient."  *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir.

17   2005).  Qualified immunity is tested under a two-prong analysis established by the United States

18   Supreme Court in *Saucier v. Katz*.  533 U.S. 194 (2001).  First, a court must determine whether the facts

19   alleged, resolving all disputes of fact in favor of the party asserting the injury, show that the officers

20   conduct violated a constitutional right.  *See id.* at 201.  If the conduct violated a constitutional right, the

21   court must determine whether the violated right was "clearly established."  *See id.*  "Even if the violated

22   right is clearly established, the *Saucier* Court recognized that it may be difficult for a police officer to

23   determine how to apply the relevant legal doctrine to the particular circumstances he or she faces.  The

24   *Saucier* Court therefore held that if the officer makes a mistake in applying the relevant legal doctrine,

25   he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable."

26   *Kennedy v. City of Ridgefield*, 411 F.3d 1134 (9th Cir. 2005) (internal citation omitted).  The rule of

27

28        [5]Equal protection is the only claim Defendants seek dismissed based on qualified immunity.

7

1  qualified immunity "provides ample protection to all but the plainly incompetent or those who

2  knowingly violate the law." *Saucier* 533 U.S. at 202.

3        As stated above, Plaintiff properly alleged an equal protection claim based on the February 18,

4  2005 incident.  Therefore the first prong of the *Saucier* test is satisfied.  Plaintiff does not show,

5  however, that racial segregation for security reasons is clearly unconstitutional.  A right is clearly

6  established if the "contours of the right [are] sufficiently clear that a reasonable official would

7  understand that what he is doing violates that right." *Saucier*, 533 U.S. at 201 (internal citation omitted).

8  The plaintiff bears the burden of demonstrating that the right is clearly established at the time of the

9  alleged violation.  *See May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997).

10        "[R]acial segregation, which is unconstitutional outside prisons, is unconstitutional within

11  (1972) (*per curiam*) (internal citations omitted).  The second prong of the *Saucier* test, however,

12  "operates at a high level of specificity." *Walker*, 370 F.3d at 977-978.  "It is insufficient that the broad

13  principle underlying a right is well-established.  'The relevant, dispositive inquiry in determining

14  whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct

15  was unlawful in the situation he confronted.'" *Id.* (internal citation omitted).  If the law did not put the

16  official on notice "that his conduct would be clearly unlawful," the official is entitled to qualified

17  immunity.  *Saucier,* 533 U.S. at 202.

18        Defendants argue that they could have reasonably believed that racially segregating prison cells

19  for security reasons did not violate the Constitution.[6]  The incident took place on February 18, 2005.  At

20  the time, the Ninth Circuit held that a prison racial segregation policy only had to be "reasonably related

21  to legitimate penological interests." *See Turner v. Safley,* 482 U.S. 78, 89 (1987); *see also Johnson v.*

22  *California,* 321 F.3d 791, 799 (9th Cir. 2003), *overruled by Johnson v. California,* 543 U.S. 499 (2005).

23  On February 23, 2005, the United States Supreme Court decided *Johnson v. California*, 543 U.S. 499

24  (2005).  *Johnson* held that all racial classifications were subject to strict scrutiny.  *Id.* at 509.  Therefore

25  at the time Plaintiff's equal protection claim arose, Defendants were not on notice that racial segregation

26

27        [6]For instance, "it has not been clearly established that [] race-based differentiation is
   unconstitutional in the context of a prison-wide lockdown instituted in response to gang- or race-based
28  violence." *Walker*, 370 F.3d at 978.

8

related to safety reasons clearly violated inmates' equal protection rights.  Moreover, even *Johnson* did not hold that racial segregation motivated by security considerations was unconstitutional.  *See id.* at 515 ("We do not decide whether the CDC's policy violates the Equal Protection Clause.  We hold only that strict scrutiny is the proper standard of review....").  Therefore the contours of the right remain undefined.  Consequently, Defendants are shielded by qualified immunity on the equal protection claim.

The Court notes that qualified immunity "means only that defendants 'need not respond in damages.  It does not mean that they cannot be enjoined from future violations of [plaintiff's] rights.'" *Walker*, 370 F.3d at 978.  Plaintiff also seeks an injunction against Defendants "assigning cell-partners to him based on race."  (TAC, p. 7).

The claim for injunctive relief remains.  A plaintiff seeking injunctive relief must ordinarily demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983).  Plaintiff alleged a policy of racial segregation in housing. (TAC, p. 3).  At this stage of litigation, the equal protection claim for injunctive relief appears viable.

Because qualified immunity applies, Plaintiff's equal protection claim for damages is not legally cognizable.  Therefore the equal protection claim for damages should be dismissed with prejudice.

## F.    Plaintiff Fails to Allege a RLUIPA Claim

Plaintiff's Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") claim should be dismissed with prejudice because Plaintiff repeatedly failed to cure the pleading deficiencies. Under RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.  Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford,* 418 F.3d 989, 994-95 (9th Cir. 2005).  "In order to reach the level of a constitutional violation, the interference with one's practice of religion "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir.

1   1997).

2        Plaintiff's Third Amended Complaint fails to cure the pleading deficiencies of his RLUIPA claim

3   once again.  Plaintiff alleges that he was denied his religious diet trays for a week.  The same allegations

4   were made in his First and Second Amended Complaints.  Upon a thorough analysis, the Court

5   repeatedly found that Plaintiff did not allege a substantial burden on the exercise of his religion.  (*See*

6   Order Dismissing First Amended Complaint, doc. # 19, pp. 8-13; Order Dismissing Second Amended

7   Complaint, doc. # 36, pp. 10-16).  Because the allegations remain the same, the claim fails again.

8        This conclusion is also supported by the law of the case doctrine.  "Under the 'law of the case'

9   doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court,

10  or a higher court, in the same case."  *Richardson v. United States,* 841 F.2d 993, 996 (9th Cir. 1988)

11  (citations omitted).  For the law of the case doctrine to apply, "the issue in question must have been

12  'decided explicitly or by necessary implication in [the] previous disposition.' "  *United States v. Lummi*

13  *Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000).  Because Plaintiff made the same RLUIPA violation

14  allegations in a consecutive series of pleadings, this Court recommends dismissal of the claim in

15  accordance with the previous decisions.  Because the failure to cure the defects in pleadings has been

16  repeated, the claim should be dismissed with prejudice.  *See Neubronner*, 6 F.3d at 672.

17  ### V.  CONCLUSION AND RECOMMENDATION

18       Having reviewed the matter, the undersigned Magistrate Judge recommends that Defendants'

19  Motion to Dismiss Third Amended Complaint be **GRANTED** in part and **DENIED** in part.  The

20  following claims should be dismissed with prejudice: Plaintiff's 1986, 1999, and 2001 claims; all claims

21  against the California Department of Corrections; all claims against Defendants Hickman, Woodford,

22  and Giurbino; RLUIPA claim; and the equal protection claim for damages.

23       This Report and Recommendation of the undersigned Magistrate Judge is submitted to the

24  United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

25       **IT IS ORDERED** that no later than **<u>January 26, 2007</u>**, any party to this action may file written

26  objections with the Court and serve a copy on all parties.  The document should be captioned

27  "Objections to Report and Recommendation."

28       **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and

05-CV-713 WQH (CAB)

1   served on all parties within **<u>10 days</u>** of being served with the objections.

2       **IT IS SO ORDERED.**

3

   DATED:  December 26, 2006

4

5   _____

6   **CATHY ANN BENCIVENGO**
    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28