# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARLUK KHAN MAYWEATHERS,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br>R. Q. HICKMAN, et al.,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 05cv0713 WQH (CAB)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Report and Recommendation (Doc. # 120) of Magistrate Judge Cathy Ann Bencivengo.

**Background**

On April 7, 2005, Plaintiff Karluk Khan Mayweathers, a state prisoner proceeding pro se, initiated this action by filing complaint pursuant to 42 U.S.C. section 1983 (Doc. # 1). On January 27, 2006, Plaintiff filed the Third Amended Complaint ("TAC") (Doc. # 41), which is the operative pleading in this case. The TAC alleges that on February 18, 2005, Defendants Hunt and Trujillo, employees of the California Department of Corrections and Rehabilitation ("CDCR") at Calipatria State Prison, impermissibly used race as a factor in assigning Plaintiff a cellmate, in violation Plaintiff's Fourteenth Amendment right to be free from racial

discrimination.[1]

On April 18, 2008, Defendants filed the Motion for Summary Judgment (Doc. # 109). Defendants move for summary judgment on grounds that Defendants did not violate Plaintiff's constitutional rights when assigning Plaintiff a cellmate, and that Defendants are entitled to qualified immunity. On May 5, 2008, Plaintiff filed the Opposition to the Motion for Summary Judgment (Doc. # 113). On May 15, 2008, Defendants filed the Reply to the Opposition (Doc. # 118).

On May 16, 2008, Magistrate Judge Bencivengo issued a Report and Recommendation recommending that this Court grant the Motion for Summary Judgment. The Magistrate Judge concluded that Defendants Hunt and Trujillo are entitled to qualified immunity because a "reasonable official would [] not have had reason to know that the use of race as a factor in determining housing assignments, for purposes of inmate safety and prison security, would clearly violate a prisoner's equal protection rights." *R&R,* p. 10. The Magistrate Judge also concluded that Plaintiff's request for injunctive relief fails because Plaintiff does not demonstrate a reasonable likelihood that he will suffer future harm (Doc. # 120).

On June 16, 2008, Plaintiff filed the Objections to the Report and Recommendation (Doc. # 121). On June 18, 2008, Defendants filed the Reply to Plaintiff's Objections to the Report and Recommendation (Doc. # 122).

### **Standard of Review**

The duties of the district court in connection with a Magistrate Judge's Report and Recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 626(b)(1). The district court must "make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989); *see also Morrison v. Cook*, Civil No. 97-57-ST, 1999 U.S. Dist. LEXIS 14233, at *1-2 (D. Ore. April 27, 1999) (citing

---

[1] The TAC also alleged claims against Defendants Hickman, Woodford, Giurbino, Bennett, Ryan, Ochoa, and the California Department of Corrections and Rehabilitation. However, on March 2, 2007, the Court dismissed these Defendants from the action (Doc. # 77).

1 *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F.2d 1309, 1313 (9th Cir. 1981)) ("When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report.").

## Discussion

A.  Qualified Immunity

Plaintiff objects to the Report and Recommendation's finding that Defendants are entitled to qualified immunity. *Objections*, p. 1. Plaintiff contends that the Magistrate Judge erred in finding that there is no clearly established constitutional right to be free from race-based housing policies in prison on grounds that (1) several international treaties explicitly prohibit racial discrimination in all forms, (2) the Equal Protection clause of the Fourteenth Amendment guarantees prisoners' the right to be free from discrimination, (3) strict scrutiny is the applicable standard for all race-based government classifications, and (4) the evidence cited to justify the race-based housing policy at issue in this case is not dispositive. *Id.* at 2-6.

The Supreme Court has articulated a two-part test for courts to apply in determining whether a government official is entitled to qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "[T]he next, sequential step is to ask whether the right was clearly established." *Saucier,* 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable public official that his or her conduct was unlawful in the situation he or she confronted. *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The Plaintiff bears the burden of demonstrating that the right is clearly established at the time of the alleged violation. *See May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997).

///
///
///

i.   *International Treaties*

Plaintiff objects to the Report and Recommendation's conclusion that Plaintiff "does not cite to, or provide copies of, any specific authority" to support his claim that Defendants should have known their conduct was unlawful because "racial segregation is illegal by International Treaty." *Objections,* p. 2 (quoting *R&R,* p. 7). Plaintiff contends that the International Covenant on Civil and Political Rights ("ICCPR"), the International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), and the Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment ("CAT") seek to eliminate racial discrimination in all forms, and that Defendants were aware, or should have been aware, of these laws. *Objections,* p. 2-4.

Defendants respond that regardless of the existence of the international treaties cited by Plaintiff, racial segregation in the prison context "is distinctly different from" racial segregation in society at large, and that "segregation inside prison walls may be necessary at times for security and discipline." *Reply*, p. 2.

A treaty ratified by the Senate can only be enforced in the courts if it is self-executing or if implementing legislation has been passed. *Dreyfus v. Von Finck,* 534 F.2d 24 (2d Cir. 1976). The ICCPR is not self-executing and Congress has not passed implementing legislation. *Hawkins v. Comparet-Cessani,* 33 F. Supp. 2d 1244. 1257 (C.D. Cal. 1999); *Jama v. INS,* 22 F. Supp. 2d 353, 364-65 (D.N.J. 1998). The ICCPR "does not create a private right of action or separate form of relief enforceable in the United States courts." *Guaylupo-Moya v. Gonzales,* 423 F.3d 121, 137 (2d Cir. 2005). The CAT does not give rise to a private right of action. *Akhtar v. Reno*, 123 F. Supp. 2d 191, 196 (S.D. N.Y. 2000) (holding that because the CAT is not self-executing, its terms do not give rise to a private cause of action); *see Rotar v. Placer County Superior Court*, 2007 U.S. Dist. LEXIS 28212 (E.D. Cal. 2007). The ICERD does not give rise to a private right of action. *Johnson v. Quander*, 370 F. Supp. 2d 79, 101 (D.D.C. 2005); *see Rotar*, 2007 U.S. Dist. LEXIS 28212. The Court concludes that Plaintiff has not demonstrated that he has clearly established rights under the ICCPR, CAT or ICERD because none of these treaties give rise to a private right of action.

ii. *Equal Protection*

Plaintiff objects to the Report and Recommendation's conclusion that it is not clear whether "the Equal Protection Clause protected prisoners from having their race used as one of many factors, for security purposes, in assigning cellmates." *Objections,* p. 4 (quoting *R&R,* p. 8). Plaintiff contends that "he was protected against invidious discrimination on the basis of race under the Equal Protection Clause of the 14th Amendment," and that the prison officials' "vague" fear that integration "may result in violence" does not justify the suspension of prisoners' constitutional rights. *Id.* at 4.

Defendants contend that the declarations of David Tristan and Robert Borg, and the statistical evidence submitted by Defendants demonstrate "CDCR's concerns about racial and gang violence," and support the Magistrate Judge's conclusion that the use of race as a factor in the housing decisions at issue in this case was constitutional. *Reply,* p. 2-3.

The applicable standard in the Ninth Circuit at the time of the alleged constitutional violation in this action was that a prison policy which used race as a factor had to be "reasonably related to a legitimate penological interest." *Johnson v. California,* 321 F.3d 791, 799 (9th Cir. 2003) (overruled on other grounds by *Johnson v. California,* 543 U.S. 499 (2005)). Plaintiff relies on *Stewart v. Rhodes,* 473 F. Supp. 1185 (S.D. Ohio 1979), to support his contention that "the Equal Protection Clause protected prisoners from having their race used as one of many factors, for security purposes, in assigning cellmates." *Objections,* p. 4. However, *Stewart* is distinguishable because in *Stewart,* the court emphasized that the defendant prison officials failed to make any showing whatsoever that their stated fears of racial and gang violence. *Stewart*, 473 F.Supp at 1187-88. In the present action, Defendants have submitted evidence to demonstrate the prison's concerns about racial and gang violence. Plaintiff has not demonstrated that the prison policy at issue in this action was not "reasonably related to a legitimate penological interest." *Johnson,* 321 F.3d at 799. The Court concludes that Plaintiff has failed to demonstrate that, at the time of the alleged constitutional violation, the Equal Protection Clause clearly prevented the consideration of race as one of many factors, for security purposes, in assigning cellmates.

        iii.    *Strict Scrutiny*

Plaintiff objects to the Report and Recommendation's conclusion that "[a]t the time of the alleged constitutional violation, the applicable standard in the Ninth Circuit was that a race-based prison policy only had to be reasonably related to a legitimate penological interest." *Objections*, p. 5; *see R&R*, p. 10. Plaintiff contends that "[s]trict scrutiny is the applicable standard for all race-based government classifications," and that this "law was clearly established" at the time the events providing the basis for Plaintiff's lawsuit occurred. *Objections*. p. 5.

Defendants contend the Magistrate Judge did not err in determining the standard of review. Defendants state that while "strict scrutiny is *now* applied to race-based prison housing regulations, the law was unclear" in 2005, when the housing decision about which Plaintiff complains was made. *Reply,* p. 3 (emphasis in original). Defendants further contend that the Magistrate Judge did not reach "the substantive issue of whether the CDCR's housing regulations passed strict scrutiny" because the report "assumed *arguendo* that Plaintiff's constitutional rights were violated." *Id*. at 4.

As previously discussed, at the time of the alleged constitutional violation, the applicable standard in the Ninth Circuit was that a prison policy which used race as a factor had to be "reasonably related to a legitimate penological interest." *Johnson,* 321 F.3d at 799. At the time of the alleged constitutional violation, the applicable standard in the Ninth Circuit was not strict scrutiny. The Court concludes that the Magistrate Judge did not err in determining the standard of review.

        iv.    *Sufficiency of the Evidence*

Plaintiff objects to the Report and Recommendation's conclusion that Defendants have provided extensive evidence outlining the safety and security concerns that supported the use of race as a factor in determining housing compatibility. *Objections*, p. 6; *see R&R*, p. 8-9. Plaintiff contends that Defendants' "'evidence,' statistics and other boilerplate mixes apples with oranges;" that Defendants failed to "cite any *integrated* cell violence;" and that a "ten year study" demonstrates that "the rate of violence between inmates segregated by race in

1  double cells *surpassed* the rate among those racially integrated." *Objections*. P. 6 (emphasis
2  in original) (citing *The Caged Melting Pot: Toward an Understanding of the Consequences
3  of Desegregation in Prisons*, 36 Law & Society Review 743 (2002)).

4        Defendants respond that Plaintiff's argument is not relevant because the Magistrate
5  Judge assumed *arguendo* that Plaintiff's constitutional rights were violated, and did not reach
6  the substantive issue of whether the evidence supported CDCR's housing regulations. *Reply*,
7  p. 4.

8        The Magistrate Judge assumed *arguendo* that Plaintiff's constitutional rights had been
9  violated in determining whether Defendants were entitled to qualified immunity.  In
10 determining whether the constitutional right at issue was clearly established, the Magistrate
11 Judge cited Defendants' evidence of racially motivated violence and riots in the prison. The
12 Court concludes that the evidence submitted by Defendants supports the conclusion that
13 Defendants "could have rationally believed that considering race as a factor when determining
14 Plaintiff's housing assignment was reasonably related to the penological goals of inmate safety
15 and prison security." *R&R,* p. 9. The Court concludes that Defendants submitted sufficient
16 evidence to demonstrate the safety and security concerns that supported the use of race as a
17 factor in determining housing compatibility.

18 B.    <u>Injunctive Relief</u>

19       Plaintiff contends that he "may be moved to another facility" due to the "current
20 overcrowding at CSP Solano." *Objections, p. 8.*  Plaintiff objects to the Report and
21 Recommendation's conclusions that "even if [Plaintiff] is re-assigned to a different facility,
22 the likelihood of future harm is minimal because the CDCR has revised its housing
23 procedures;" that the "new regulations, which are being implemented in phases . . . specifically
24 state that race will no longer be considered as a primary factor in determining housing
25 assignments;" and that Plaintiff "lacks standing to sue on behalf of others" because he "is no
26 longer suffering his alleged injury of racial segregation." *Objections*, p.8; *see R&R*, p. 11-12.
27 ///
28 ///

1  Defendants contend that Plaintiff does not cite any housing move currently under
2 consideration or being recommended for him but instead "speculates" that he may be moved;
3 that Plaintiff fails to show a demonstrated probability or a reasonable expectation that he would
4 be incarcerated in a celled institution before integrated housing policies are implemented; and
5 that integrated housing regulations are already being implemented and are scheduled to be
6 effective in all CDCR institutions by January, 2009. *Reply*, p. 5.

7  The record demonstrates that Plaintiff is no longer housed in a cell at Calipatria, but is
8 instead housed in a dormitory facility at Solano Prison. Plaintiff has submitted no evidence
9 to demonstrate that a future transfer is likely or imminent. *See City of Los Angeles v. Lyons*,
10 461 U.S. 95, 111 (1983) ("The speculative nature of [the plaintiff's] claim of future injury
11 requires a finding that this prerequisite of equitable relief has not been fulfilled."). The Court
12 concludes that Plaintiff has not demonstrated a significant threat of irreparable injury that
13 would give rise to injunctive relief.

### Conclusion

15  The Court has reviewed the Report and Recommendation de novo. IT IS HEREBY
16 ORDERED that the Report and Recommendation (Doc. # 120) is **ADOPTED**. The Motion
17 for Summary Judgment (Doc. # 109) is **GRANTED**.

19 DATED: October 21, 2008

**WILLIAM Q. HAYES**
United States District Judge